UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NICOLE K. BLACKMON,

      **Plaintiff,**

v.                                                                        Case No: 6:22-cv-1283-RBD-DCI

COMMISSIONER OF SOCIAL
SECURITY,

      **Defendant.**

---

REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying an application for disability insurance benefits. In a decision dated August 19, 2021, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from September 29, 2020, through the date of the decision. R. 35. Claimant requested review of the decision and the Appeals Council denied the request. R. 1. Having considered the parties' memoranda and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

    **I.**      **Issues on Appeal**

Claimant raises two issues on appeal: (1) the ALJ's Residual Functional Capacity (RFC) finding is deficient because it did not include limitations relating to absenteeism or time off task and "does not include any corresponding limitations that would account for the ALJ's finding that [Claimant] had 'mild' limitations in the domain of 'adapting or managing oneself'"; and (2) the Appeals Council abused its discretion in declining to admit new and material evidence that showed that Claimant had "mature" avascular necrosis in the right hip. Doc. 21.

II.     **Standard of Review**

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).  "With respect to the Commissioner's legal conclusions, however, our review is *de novo*."  *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Claimant filed the claim after March 27, 2017, so the revised regulations apply in this action.

III.    **Discussion**

   A.  **Issue No. 1: Whether the ALJ's RFC is materially deficient because it does not include any limitation relating to absenteeism or time off task despite the "extraordinary number of visits and hospitalizations documented in the record" and does not include "any corresponding limitations that would account for the ALJ's finding that [Claimant] had 'mild' limitations in the domain of 'adapting or managing oneself.'"**

   1.  <u>Absenteeism or time off task</u>

Issue No. 1 includes two sub-issues.  First, Claimant challenges the ALJ's RFC because it does not include a limitation relating to absenteeism or time-off task.  The ALJ found that Claimant has the RFC to perform sedentary work except that:

> the claimant may frequently balance, occasionally stoop, kneel, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes or scaffolds; the claimant must avoid concentrated exposure to extremes of heat and cold, humidity, and pulmonary irritants, such as dust, odors, fumes,

gases and poor ventilation, and must avoid all exposure to unprotected heights, and dangerous moving machinery.

R. 28.

In rendering this assessment, the ALJ considers evidence such as the claimant's medical history; medical signs and findings; medical source statements; effects of treatment, such as the frequency of treatment, duration, and disruption to routine; reports of daily activities; evidence from attempts to work; recorded observations; the effects of symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *5 (S.S.A. 1996); see also 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3).   The RFC assessment ordinarily is based on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1.

Here, Claimant argues that her significant number of hospitalizations, ER visits, and doctors' appointments show that she could not sustain full-time, competitive employment, at any exertional or skill level and the ALJ's decision was "materially deficient" because it did not include a limitation(s) relating to absenteeism and time off task. Docs. 21 at 31-32. Claimant states that from June 15, 2019 to April 22, 2021, "she was variously admitted into the hospital, visiting the ER, or else visiting one of her numerous primary and specialist treatment providers on at least 71 of those days." Id. at 32. Claimant argues that "the documented 71 instances of inpatient hospitalizations, ER visits, and doctor appointments represents the need to be tardy, absent, leave early, of any combination thereof, that would equate to a minimum occurrence rate of 3.14 times every 30 days." Id. at 33. Claimant contends that "[t]he record here contains prima facie evidence

that [Claimant] was, in fact, 'tardy, absent, [left] early, or any combination of those' at **_over three_**

**_times_** the acceptable rate." *Id*. (emphasis in original).[1]

To the extent that Issue No. 1 relates to an absenteeism or time off task limitations,

Claimant raises the assignment of error in a perfunctory manner despite the significant time spent

on this topic in the Initial Brief and Reply.  "Issues raised in a perfunctory manner, without

supporting arguments and citation to authorities, are generally deemed waived." *Battle v. Comm'r*

*of Soc. Sec.*, 787 Fed. App'x 686, 687 (11th Cir. 2019) (quoting *NLRB v. McClain of Ga., Inc.*,

138 F.3d 1418, 1422 (11th Cir. 1998)); *see also Howze v. Soc. Sec. Admin.*, 2022 WL 152236, at

*3 (11th Cir. Jan. 18, 2022) ("Because [the plaintiff] cites to no authority for this argument, she

has abandoned it"); *Jacobus v. Comm'r of Soc. Sec.*, 2016 WL 6080607, at *3 n.2 (11th Cir. Oct.

18, 2016) (stating that claimant's perfunctory argument was arguably abandoned).

Other than Claimant's general citation to SSR 96-8p's requirement that the ALJ's discuss

an individual's ability to perform sustained activity, Claimant cites to no law to support the more

specific proposition that an RFC must account for absenteeism based on the sheer number of

doctor's visits.  Claimant spends 8 pages in her Initial Brief to argue that the record "contains

*prima facie* evidence" that she was tardy or absent "at **_over three times_** the acceptable rate," but

includes no authority demonstrating the legal significance of this evidence to this case.

Claimant also concludes that "based on the ALJ's indisputably extensive reliance on

evidence from the entirety of the original period at issue, this court should deem her to have also

---

[1] Claimant adds that her testimony corroborates the frequency with which she was tardy, absent, or left-early, and offers that in the past—before the alleged onset date—a physician approved intermittent time off pursuant to the Family Medical Leave Act and another physician wrote that it was his opinion that Claimant should remain out of work until July 19, 2020 due to medical conditions and ongoing treatment. *Id*. at 33-34.  Claimant's alleged onset date is September 29, 2020.  R. 25.

had constructive notice of the frequency with which [Claimant] would likely have been 'tardy, absent, leave early, or any combination of those.'" Do. 21 at 37-38. Again, there is no citation to any authority that stands for the premise that such notice should be attributed to the ALJ or that Claimant is entitled to relief based on the ALJ's awareness of the quantity of visits. As such, Claimant's assertions are completely unsupported and are deemed waived.

To the extent the Court finds that Claimant has not waived the argument, the undersigned still recommends that relief is not warranted. While the RFC assessment ordinarily is based on an individual's ability to do sustained activity, the Eleventh Circuit has held that "whether the number of medical appointments affects [the claimant's] ability to work is not an appropriate consideration for assessing [the claimant's] residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (citing SSR 96-8p). Therefore, "the number of medical appointments a plaintiff attends is not a functional limitation caused by her impairments that would affect her physical or mental capabilities." *Battle v. Comm'r of Soc. Sec.*, 2021 WL 1207757, at *10 (M.D. Fla. Mar. 31, 2021) (quoting *Cherkaoui*, 678 F. App'x at 904).

Thus, the ALJ did not have to consider whether Claimant's "extraordinary number of medical visits and hospitalizations" affected the ability to work with respect to the RFC. Claimant's argument is due to be rejected. *Pecora v. Comm'r of Soc. Sec.*, 2022 WL 4463536, at *4 (M.D. Fla. Sept. 26, 2022) (rejecting the claimant's contention that the ALJ failed to properly account for excessive absenteeism when formulating the RFC based on the claimant's 126 visits to the hospital as absenteeism is not a functional limitation under *Cherkaoui*); *see also Chelsea B. v. Kijakazi*, 2022 WL 3648673, at *5 (D. Minn. July 27, 2022) ("An RFC determination need not,

however, account for excessive absenteeism when a plaintiff attempts to demonstrate said absenteeism by merely pointing to high number of appointments the plaintiff is required to attend.").

The undersigned notes that Claimant appears to reframe her absenteeism argument in the Reply Brief.  Doc. 23.  The Eleventh Circuit specified in *Cherkaoui* that the claimant did not "expressly argue that the ALJ erred by failing to consider the effect the number of medical appointments had on her ability to obtain employment" but"[i]nstead, she ask[ed] the [Court of Appeals] to consider the effect of the evidence of her excessive number of medical appointments on her [RFC]" which is "beyond the scope of [the court's] review since it would require reweighing the evidence of [the claimant's] capabilities for employment."  678 F. App'x at 904 (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).

Claimant attempts to distinguish *Cherkaoui* and asserts that she has made an appropriate challenge to the ALJ's decision. Doc. 23 at 2.  The undersigned, however, does not agree because (1) Claimant's absenteeism argument is raised in a wholly perfunctory manner and is deemed waived as discussed *supra*; and (2) Claimant's Initial Brief seems to reflect that she raised the very argument that *Cherkaoui* rejected.  Any attempt to recharacterize the assignment of error in the Reply Brief is improper.  *See Offutt v. Comm'r of Soc. Sec.*, 2023 WL 2930702, at \*2 (M.D. Fla. Feb. 28 2023) (finding that the magistrate judge correctly found that the claimant waived any challenge to the ALJ's assessment of the subjective reports by failing to bring the argument in her initial brief"); *see also Binder v. Comm'r of Soc. Sec.*, 2019 WL 1397923, at\*2 (M.D. Fla. Mar. 28, 2019) ("Abandonment is not cured by raising the issue for the first time in the reply brief.") (citing *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009)).

Even so, assuming Claimant's argument is not deemed waived and Claimant's "numbers" argument is otherwise proper, the undersigned is still not persuaded that Claimant is entitled to relief. The ALJ thoroughly summarized Claimant's medical treatment and addressed emergency room and hospitalization visits, or lack thereof, in the decision. R. 28, 29, 30.[2] As Claimant notes, the ALJ asked the vocational expert regarding the availability of jobs for "an individual who is going to be tardy, absent, leave early, or any combination of those if that's greater than one day a month on a regular and ongoing basis" during the hearing. R. 85. While the ALJ did not apparently credit Claimant's testimony regarding missing work or being tardy, the ALJ did consider it and decided not to include any absenteeism or time off task in the RFC. The undersigned finds that the ALJ properly considered the nature of Claimant's treatment in accordance with the regulations.

Finally, Claimant makes several statements in the Initial Brief that do not appear to support the claim but instead seem to be general thoughts or musings. For example, Claimant states the following:

> Curiously, in what appears to be a failure of the parties to properly supplement the record, there is no evidence on file from Blackmon's physical therapy sessions, though her attendance at physical and aqua therapy was noted on several instances, nor does it contain any evidence from 2021 outside of one visit to a single provider, which is very uncharacteristic compared to the preceding two-year period.
>
> ***
>
> Never mind that it was highly questionable for the ALJ in the first instance to even issue a decision without any material evidence at all from the seven months

---

[2] The ALJ also discounted Claimant's pain management provider, Jamesetta Lewis, D.O., "indicat[ion]" that Claimant would be off-task 25% of the time and absent four days per month. R. 33. With respect to the provider, the ALJ found that "claimant presented as and when appointed and was able to participate in her treatment and treatment planning, such that there is no real objective basis for the opinions on absenteeism or off-task behaviors. Otherwise, this opinion is not consistent with, or supported by, the overall evidence of record, described in digest form above, in the analysis of the opinions of Drs. Mikalov and Siddiqui. In consequence, this opinion is not persuasive." *Id.*

> preceding her decision, what is clear is that the pre-amended period evidence was an integral component of the ALJ's rational for denying [Claimant's] claim.
> ***
>
> Why, then, didn't the ALJ ultimately issue an allowance? Presumably it's because something popped up during the testimony at the hearing that neither the ALJ nor the claimant's representative had anticipated.

Doc. 21 at 32, 36, 37. It is unclear how these statements are tied to the issue and, even if they were, there is no citation to authority to support a finding that Claimant is entitled to relief based on presumptions or what Claimant finds to be interesting. As such, to the extent the statements are presented as arguments, they are deemed waived. *See Jacobus*, 2016 WL 6080607, at *3 n.2.

Further, Claimant spends two full pages discussing the ALJ's statement at the hearing regarding amendment to the onset date. Doc. 21 at 35-36. Claimant opines that ALJs "allud[e] to the idea that they would be amendable to issu[e] an allowance on a claim under one of the age-based rules in the Medical-Vocational Guidelines once a claimant reaches the age of at least 50, but not before then." *Id*. at 35. Claimant speculates that "this makes writing a decision easier" and proclaims that "the ALJ did just this" and "[n]ot surprisingly, [Claimant's] representative read between the lines and took the bait, agreeing to formally amend her alleged onset date to September 29, 2020, which at once rid the case of the pesky issues of SGA-level earnings and the claimant being under 50 (Tr. 52)." *Id*. at 35, 36.

The relevance of this discussion is unclear, but to the extent Claimant challenges the ALJ's decision based on conjecture regarding the ALJ's motives or counsel's decision, the argument is also waived. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (noting that an issue was waived because the claimant did not elaborate on the claim or provide citation to authority about the claim).

2.   Adapting or managing oneself

In the second sub-issue in Issue No. 1, Claimant argues that the ALJ erred because the RFC does not include a limitation that would account for the ALJ's finding at step two that Claimant had mild limitations in the domain of adapting or managing oneself.  The undersigned finds that the argument is without merit.

At step two, the ALJ found that Claimant had the following severe impairments: obesity, diabetes mellitus II, degenerative disc disease of the cervical spine and lumbar spine/post-laminectomy syndrome-lumbar/radiculopathy, lumbar/myalgia and chronic pain, chronic obstructive pulmonary disease/sarcoidosis, and empty sella syndrome, with central hypothyroidism, hypopituitarism, cranial diabetes insipidus and adrenal insufficiency (20 CFR 404.1520(c)).  The ALJ then found at step two that Claimant alleged or the record suggested that "the existence of the following conditions, which are not found to be severe: unspecified depressive disorder, adjustment disorder with anxiety, chronic anxiety, cervical radiculopathy, nephropathy, benign hypertension, mild obstructive sleep apnea, patent foramen ovale, vitamin D deficiency, and status-post gastric sleeve surgery."  R. 25.

The ALJ applied the "special technique" for evaluating mental impairments, which involves rating the degree of functional limitation based on the extent the mental impairment interferes with the claimant's ability to function independently, appropriately, effectively, and on a sustained basis as to the following four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. §§ 404.1520a(b), (c) and 416.920a(b), (c).[3]

---

[3] Specifically, the ALJ conducted a Psychiatric Review Technique (PRT) assessment, which examined Claimant's ability to understand, remember, and apply information, interact with others, concentrate, persist, and maintain pace, and adapt or manage herself.  As the ALJ noted, "[t]he

With respect to the functional area at issue, the ALJ determined the following:

> The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant is generally assessed with good or normal insight and judgment (12F/6), (15F/61), sufficient to make decisions and employ perceived problem-solving skills (13F/5). The claimant is maintaining an independent household (8E/1) after her mother moved out in October 2020 (15F/161). She is able to attend to her self-care, to engage in light household chores, including making beds, picking up clothes, preparing simple meals and washing dishes. She is able to drive a car, shop in stores, use a computer, manage her own finances and an e-mail account. She is charged with the care of her granddaughter twice per week, and has spent weekends with her granddaughter. The claimant watches television and assembles her family tree for pleasure (3E/1), (4E), (8E), (13F/4), (15F/118).
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).

R. at 26-27.

Claimant does not seem to challenge the ALJ's mild limitation finding at step two, but instead argues that the ALJ erred because the RFC is "devoid of any reasonable corresponding mental limitations" with respect to adapting or managing oneself. Doc. 21 at 40. Indeed, the ALJ must consider all impairments (severe and non-severe) in combination throughout the rest of the sequential process. *See Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 842 (11th Cir. 2014) ("[B]eyond the second step, [however,] the ALJ must consider the entirety of the claimant's

---

limitations in 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." R. 27.

The ALJ must assign a rating of none, mild, moderate, marked, or extreme limitation in each area of functioning. 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Under the regulations, if the ALJ rates the degrees of limitations as "none" or "mild" then the ALJ generally concludes that the impairment is non severe unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to perform basic work activities.

limitations, regardless of whether they are individually disabling"); *DeVito v. Comm'r of Soc. Sec.*, 2022 WL 3572872, at*4 (M.D. Fla. Aug. 19, 2022) ("In formulating the RFC, the ALJ must consider all relevant evidence in the record, including evidence of non-severe impairments.") (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004)).

While it appears that the RFC was limited to Claimant's physical abilities, at step four of the analysis the ALJ still discussed Claimant's ability to attend to self-care, maintain an independent household, drive, shop, manage finances, care for her granddaughter, etc. R. 31, 32. These are the same facts the ALJ considered when she found that Claimant had a mild limitation in adapting and managing oneself at step two.  R. 26.  At step four, the ALJ also considered a consultative psychological examiner's report who "indicated" that Claimant would have mild limitations in her ability to adapt to the stressors of the day-to-day work.  R. 33.  The ALJ ultimately specified that all symptoms were considered in determining the RFC.  R. 23.

Since the ALJ determined that Claimant suffered from multiple severe impairments at step two; proceeded beyond that step in the sequential analysis; and adequately considered Claimant's mental functioning, including adapting and managing oneself in the latter steps of the decision, the undersigned recommends that there no reason to disrupt the ALJ's determination.

### B. Issue No. 2: Whether the Appeals Council abused its discretion in declining to admit new and material evidence showing Claimant had mature avascular necrosis in the right hip.

A claimant is generally permitted to present new evidence at each stage of the administrative process.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council must consider evidence that was not presented to the ALJ when that evidence is new, material, and chronologically relevant.  *Id.*

Evidence is material if "there is a reasonable possibility that it would change the administrative result." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987); *see* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (stating that the Appeals Council will review a case "[s]ubject to paragraph (b) of this section, [if it] receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision").

The Appeals Council must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram*, 496 F.3d at 1261. However, the Appeals Council has the discretion to refuse review of the ALJ's decision denying benefits. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). If the Appeals Council considers new evidence but denies review, the Appeals Council is not required to articulate its reasons for denying review. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784-85 (11th Cir. 2014). If a claimant challenges the Appeals Council's denial, the reviewing court must determine whether the new evidence renders the denial of benefits erroneous. *Id*. at 785 (citing *Ingram*, 496 F.3d at 1262).

Claimant states that she submitted to the Appeals Council an MRI of the right hip dated March 25, 2022. Doc. 21 at 42. Dr. Malajikian's MRI report reflects the following:

> **FINDINGS:**
> There is a suspected tiny focus of avascular necrosis along the anterior medial portion of the right femoral head. The right hip is otherwise unremarkable. No sizable joint effusion of the right hip.
>
> There is a small focus of mature appearing avascular necrosis along the superior-medial portion of the left femoral head. No sizable joint effusion of the left hip. The SI joints are grossly unremarkable. The bony pelvis is otherwise unremarkable.
>
> The gluteal tendon insertions appear grossly intact on the greater trochanters. There does appear to be mild tendinosis of the bilateral hamstring origins. There

is narrowing of edema within the bilateral ischiofemoral intervals. The musculature about the pelvis is unremarkable.

The pelvic contents are grossly unremarkable.
**IMPRESSION:**

Small amount of mature appearing avascular necrosis of the bilateral femoral heads, left greater than right. No significant flattening of the articular surfaces.

No acute avascular necrosis.

Narrowed ischiofemoral intervals bilaterally with mild soft tissue edema may be seen with ischiofemoral impingement. The narrowed intervals in this patient may in part be related to patient positioning, given the positioning of the bilateral femora which do appear externally rotated.

R. 12-13.

The Appeals Council found the following:

You submitted an MRI taken by Krikor Malajikian, MD, dated March 25, 2022 (4 pages); and third party statements from Debbie Reynolds and Angela Dunaway, both dated April 28, 2022 (2 pages). The Administrative Law Judge decided your case through August 19, 2021. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 19, 2021.

If you want us to consider whether you were disabled after August 19, 2021, you need to apply again. If you file a new claim for disability insurance benefits within 6 months after you receive this letter, we can use September 1, 2021, the date of your request for review, as the date of your new claim. The date you file a new claim can make a difference in the amount of benefits we can pay.

R. 2.

Claimant argues that contrary to the Appeals Council's finding, the MRI of the right hip is new, material, chronologically relevant evidence and "the findings contained therein are contrary to the weight of the ALJ's actions, findings, and conclusions because it shows [Claimant] had 'mature' avascular necrosis in the right hip, corroborating her subjective complaints about her right hip pain throughout the original period at issue, and establishing the existence of an additional 'severe' medically determinable impairment that the ALJ did not consider at all in

making her decision." Doc. 21 at 42-43.   Claimant contends that remand is warranted because the ALJ did not acknowledge a hip impairment "let alone one that could significantly impact to sustain full-time, competitive work." *Id.* at 43.   Claimant states "[a]lthough small in size, the report states the necrosis was 'mature,' suggesting it had been there for some time as opposed to appearing after acute onset (Tr. 12)." *Id.*

Claimant argues that the report establishes that there is a reasonable likelihood that the ALJ's decision would have been different if the report was considered since the ALJ already found that Claimant was significantly limited in her ability to stand and walk. *Id.* at 44.   Claimant represents that "[i]f the ALJ had properly assessed [Claimant's] hip impairment, there is no doubt there would be further erosion of [Claimant's] function capacity such that she may not even be able to perform the minimum amount of standing and walking required of sedentary work." *Id.*

Upon due consideration, the undersigned recommends that the Appeals Council properly found that the MRI was not chronologically relevant.   New evidence is chronologically relevant if "it relates to the period on or before the date of the hearing decision." *Washington v. Soc. Sec. Admin. Comm'r*, 791 F. App'x 871, 876 (11th Cir. 2019) (citations omitted).   In *Washington Washington v. Comm'r of Soc. Sec.*, 806 F.3d 1317, 1322-23 (11th Cir. 2015), the Eleventh Circuit held that the opinion of a psychologist who examined the claimant seven months after the ALJ's decision was chronologically relevant, noting that "[m]edical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant."

However, *Washington* has since been "confined to 'specific circumstances' - where the claimant had described symptoms from the pre-ALJ period and the practitioner had reviewed records from that period." *Downing v. Comm'r of Soc. Sec.*, 856 F. App'x 822, 824 (11th Cir. 2021) (citing *Hargress v. Soc. Sec. Admin. Comm'r*, 883 F.3d 1302, 1309-10 (11th Cir. 2018)).

"Records relate back if they reflect that, in reaching his post-decision opinion, the doctor reviewed records from the claimant's treatment that came before the ALJ's decision and if those records demonstrate that the condition or symptoms were more severe than the ALJ determined." *Wilkerson v. Berryhill*, 2018 WL 1368623, at *7 (N.D. Ala. Mar. 16, 2018).

On its face, the MRI was concluded months after the period of disability and there is no discussion in the record that explains how the results relate back to a prior date. The MRI report does not reflect that Dr. Malajikian reviewed any of Claimant's previous medical records or based findings on Claimant's condition before the relevant date.[4] Dr. Malajikian uses the word "mature" but does not relate the MRI findings to Claimant's status prior to the ALJ's decision.[5] The Appeals Council found that the MRI report does not affect the decision of whether Claimant was disabled on or before August 19, 2021 and the undersigned finds that an impression on March 25, 2022—seven months later—does not establish that the MRI impression relates to the relevant period in any way, even with the inclusion of the word "mature." Simply put, the MRI report reflects Claimant's condition as of March 25, 2022 and only contains Dr. Malajikian's impression at that time. Accordingly, the undersigned recommends that the Appeals Council did not err in finding that the MRI report was not chronologically relevant. *See Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858 (11th Cir. 2018) (finding that the Appeals Council correctly determined that an

---

[4] Dr. Malajikian only noted that the reason for the exam was a history of long-term steroid use. R. 11.

[5] Dr. Malajikian's MRI report reflects a finding of "a small focus of mature appearing avascular necrosis along the superior-medial portion of the left femoral head. No sizable joint effusion of the left hip." R. 12. There is no "finding" of "mature appearing avascular necrosis" as to the right hip. *See id*. Claimant's argument apparently relates to Dr. Malajikian's "impression" that there is a "[s]mall amount of mature appearing avascular necrosis of the bilateral femoral heads, left greater than right." *Id*.

MRI report dated four months after the ALJ's decision was not chronologically relevant because there was no indication the findings related back to the relevant time-period).[6]

Further, the undersigned recommends that there is not a reasonable probability that the MRI would change the outcome of the proceedings.  Namely, Dr. Malajikian's impression that "mature appearing" avascular necrosis exists is insufficient to show that Claimant's right hip caused a disabling limitation not accounted for in the RFC.  *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (stating that "a diagnosis or a mere showing of' 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); *Norton v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 95748, at *13-14 (M.D. Fla. Mar. 3, 2017) ("Lastly, the MRI results are insufficient in and of themselves to show that [p]laintiff's back issues causes a disabling limitation not accounted for by the RFC") (citations omitted).   The MRI may reflect a diagnosis of mature appearing avascular necrosis in the right hip, but it does not establish limitations.  Thus, Claimant has failed to show that the MRI would likely change the underlying decision.

Overall, the undersigned recommends that the ALJ properly considered Claimant's condition as a whole and the inclusion of one MRI from seven months after the ALJ's decision that does not speak to functional limitations or explain how it relates to the relevant time period would not likely change the administrative result.  Plaintiff has not demonstrated that "in light of

---

[6] Also, to the limited extent that Claimant submitted the MRI to show a new or worsening condition after the ALJ's decision, the evaluation would still not be chronologically relevant. *Stone v. SSA, Comm'r*, 728 Fed. Appx. 966, 969 (11th Cir. 2018) (finding a medical opinion not chronologically relevant when it related to the worsening of a condition or the onset of a new condition after the date of the ALJ's decision.).

the new evidence submitted to the AC, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013).  The undesigned finds that Claimant's argument fails.

## IV.    Conclusion

For the stated reasons, it is **RECOMMENDED** that:

1. The final decision of the Commissioner be **AFFIRMED**; and

2. The Clerk be directed to enter judgment for the Commissioner and close the case.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.  28 U.S.C. § 636(b)(1)(C).  A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on May 25, 2023.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy